

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed December 17, 2018

_____
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| TEDDY D. MOODY, JR., | § § | CASE NO. 18-30130-SGJ-7 |
| DEBTOR. | § § § | |

_____

| | | |
|---|---|---|
| WILLIAM T. NEARY, UNITED STATES TRUSTEE, | § § § § | |
| PLAINTIFF, | § § | ADVERSARY NO. 18-03214-SGJ |
| v. | § § | |
| TEDDY D. MOODY, JR. | § § | HON. STACY G. JERMIGAN |
| DEFENDANT. | § § | |

**Findings of Fact and Conclusions of Law**

This cause came before the Court for trial on the United States Trustee's *Complaint to Deny Discharge*. This Complaint is filed under 11 U.S.C. § 727. The Court has heard the testimony, reviewed the pleadings, observed the witnesses, reviewed the evidence, and considered the arguments of counsel. Based on those observations, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52:

**STIPULATED FACTS**

Prior to trial, the parties submitted a proposed pre-trial order to the Court. In that order, the parties stipulated to a substantial portion of the facts in this case. The Court accepts these stipulated facts and they are as follows:

Defendant's Educational and Professional Background

1. Defendant is a high school graduate.

2. Defendant has primarily been in the business of manufacturing and selling commercial trailers for at least the last 8 years.

3. During that time, Defendant worked for a company called Factory Transport Inc. ("Factory Transport"), a business that manufactures and sells commercial trailers

4. Factory Transport filed bankruptcy itself in December of 2017. Valda Moore, the Defendant's long-term girlfriend, was the CEO of Factory Transport while the Defendant worked for the company.

5. Defendant has been working in a similar role for another entity called Race Trailer Parts Inc., since January 2018. Ms. Moore is also the CEO of Race Trailer Parts Inc.

Defendant's Assets, Liabilities, and Financial Condition

6. As of the Petition Date, Defendant owned real property located at 11295 CR 2312 Terrell, TX 75160 ("Terrell Property"). The property is unencumbered.

7. Defendant valued the Terrell Property at $300,000.00.

8. Defendant also listed the following assets on his Original Schedule A/B:

   a. 2017 Ford F350, $58,000.00;

   b. 2017 Jeep Wrangler, $30,000.00 (daughter's vehicle);

   c. Kubota L4060 HSTC Tractor, $28,000.00;

   d. 2016 Polaris Razor, $12,000.00;

   e. 2015 Polaris Razor, $500.00;

   f. 2018 KTM Motorcycle, $4,000.00;

   g. Household Furnishings, $4,000.00;

   h. Electronics' $650.00; and

   i. Firearms, $850.00.

9. Defendant listed no bank accounts or cash on his Original, First Amended Schedules, or Second Amended Schedules.

10. Defendant added the following assets to his First Amended Schedules A/B:

    a. 2017 Yamaha TTR125, $1,200.00;

    b. Misc. Tools, $3,750.00;

    c. Mig and Tig Welder, Maketa Grinders, $1,900.00;

    d. 2016 32 ft. Gooseneck Flatbed trailer, $2,000.00.

11. On his Second Amended Schedules, the Defendant added a $5,000,000.00 counterclaim against Bob Winston, an agent for Off Road Hospitality, LLC.

12. Off Road Hospitality, LLC is listed as a creditor in the Defendant's underlying bankruptcy case.

13. Defendant's Schedule D lists the following secured claims:

   a. $44,880.00 secured debt owed to Allied Financial for the Jeep Wrangler;

   b. $70,110.13 secured debt owed to Ford Motor Company for the Ford F350;

   c. $31,466.00 secured debt owed to Kubota Credit USA for the Kubota Tractor; and

   d. $18,516.00 secured debt owed to Sheffield Financial for the 2016 Polaris Razor.

14. Defendant's Schedule E/F lists the following non-priority unsecured claims:

   a. $13,874.00 unsecured debt owed to American Express, account no. 1008;

   b. $16,118.73 unsecured debt owed to American Express Platinum;

   c. $8,500.00 unsecured debt owed to Bank of American, account no. 8218;

   d. $5,417.63 unsecured debt owed to Barclay, account no. 8877;

   e. $10,470.00 unsecured debt owed to Barclay, account no. 9869;

   f. $1,148.00 unsecured debt owed to Capital One, account no. 7558;

   g. $1,400.00 unsecured debt owed to Chase-Sapphire, account no. 6281;

   h. $225.00 unsecured debt owed to Citibank, account no. 6529;

   i. $302.00 unsecured debt owed to Discover, account no. 5183;

   j. $9,624.63 in attorney fees owed to Braden, Varner, & Angelley P.C.;

   k. $6,316.44 in attorney fees owed to Braden, Varner, & Angelley, P.C.;

   l. $4,000.00 unsecured debt owed to the IRS;

   m. $730,000.00 unsecured debt resulting from a lawsuit by Off Road Hospitality, LLC; and

   n. $29,531.03 in attorney fees owed to The Erickson Law Firm.

15. Defendant listed the following notable monthly expenses on his Schedule J:

    a. $500.00 in Utilities;

    b. $500.00 in Food and Housekeeping Supplies;

    c. $1,454.00 for Health Insurance;

    d. $1,199.85 in Car Payments for Vehicle 1(Ford F350)

    e. $500.00 for Transportation;

    f. $738.00 in Car Payments for Vehicle 2 (Jeep);

    g. $601.47 in payments for the Kubota Tractor; and

    h. $473.58 in payments for the 2016 Polaris.

16. On his Original SOFA, the Defendant averred the following amounts of gross income:

    a. $0.00 in gross income in 2013;

    b. $0.00 in gross income in 2014;

    c. $0.00 in gross income in 2016;

    d. $0.00 in gross income in 2017; and

    e. $0.00 in gross income from January 1, 2018 until the date petition date.

17. There is no entry for the year of 2015 on the Original SOFA.

18. On his First Amended SOFA, the Defendant added $3,750.00 in lost tools.

19. On his Second Amended SOFA, the Defendant listed $15,000 of gross income for the year of 2015.

20. On his Second Amended SOFA, the Defendant listed $15,000 of gross income for the year of 2016.

21. The gross income amount for the years of 2017 and 2018 remained $0.00 on each of the Amended SOFAs.

22. On Question 23 on all of his SOFAs, the Defendant averred that he did not hold or control any property that someone else owns.

2004 Examination of the Defendant and Factory Transport Inc.

23. The United States Trustee filed agreed motions for Rule 2004 Examinations of the Defendant and Factory Transport Inc. The Court entered orders granting both motions.

24. The examinations were held simultaneously on May 3, 2018. The Defendant was present, along with Ms. Moore in her capacity as CEO of Factory Transport.

25. During the examination, Defendant testified that Factory Transport made the monthly payments of the Ford F350 on his schedules. The vehicle is registered in his name. Defendant went on to state that Factory Transport made all of the monthly payments on the Ford through its bank accounts.

26. Defendant also testified that the Jeep listed on his schedules was bought for his daughter, and was being paid for my Race Trailer Parts Inc.

27. Defendant testified that the Kubota tractor listed on his schedules was also paid for by Factory Transport.

28. Defendant testified that Factory Transport also made the monthly payments on the Polaris listed on his schedules.

29. Defendant testified that Factory Transport paid the insurance premiums for the following:
   a. The 2011 Yamaha;
   b. The 2016 Polaris;
   c. The 2018 KTM motorcycle; and
   d. The 2017 Yamaha.

30. Defendant also testified that every one of his personal credit cards had received payments from Factory Transport on his behalf. He went on to testify that each of the credit cards likely had both business and personal expenses; and that each credit card balance had received payments from Factory Transport.

31. Ms. Moore testified that Factory Transport compensated Defendant for his labor by making payments on his personal credit card balances. Defendant agreed with Ms. Moore's testimony; specifically that for at least the years of 2016 and 2017, Factory Transport paid his living expenses by paying his personal credit card balances.

Defendant's Income

32. Defendant did not maintain a record of the actual amount of Factory Transport funds used for his personal expenses.

33. The vehicle payments were made with direct draws from the Factory Transport corporate account, but there is no record of the other personal expenses the company paid, other than general payments to the various credit card companies the Defendant had balances with.

34. Additionally, each card statement has both the Defendant's personal expense charges, and charges for Factory Transport business.

## The Court's Findings of Fact and Conclusions of Law

In addition to the stipulated facts above, the Court makes the following finding of fact and conclusions of law based on the evidence presented at trial:

**§727(a)(3)**

35. 11 U.S.C. § 727(a)(3), provides in part that "[t]he court shall grant the debtor a discharge, unless……(3) the debtor, has concealed, destroyed, mutilated, falsified, or failed to keep or

preserve any recorded information...from which the debtor's financial condition or business transactions might be ascertained...."

36. The Defendant's former employer, Factory Transport paid most, if not all, of the Defendant's personal expenses rather than paying the Defendant a wage or salary. Thus, it is impossible to determine what the Defendant's income was in the year before filing bankruptcy or any of the several years preceding the bankruptcy filing.

37. The Defendant would always use more than a half-dozen personal credit cards for his life expenses, as well as allegedly for Factory Transport expenses. Factory Transport would then pay the Defendant's entire credit card bills to compensate him for his work. There is no way to differentiate between personal and business expenses.

38. Additionally, the evidence showed that Factory Transport would sometimes just directly pay personal expenses of the debtor from its corporate bank account.

39. Taken together, the above facts demonstrate a failure to keep records from which the Defendant's true financial condition or business transactions might be ascertained, constituting grounds under §727(a)(3) to deny the Defendant's discharge.

**§727(a)(4)**

40. "The court shall grant the debtor a discharge unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

41. The party objecting to discharge bears the burden of proving by a preponderance of the evidence that (1) the debtor made the statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. Sholdra v. Chilmark, LLP (In re

Sholdra), 249 F.3d 380, 382 (5th Cir. 2001).  See also *Cadle Company v. Mitchell (In re Mitchell)*, 102 Fed.Appx. 860, 2004 WL 1448041 (5th Cir. 2004).

42. "In determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors.  The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears on a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Beaubouef*, 966 F.2d 174 at 177; *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 356 (Bankr. N.D. Tex. 2010) (quoting *In re Beaubouef*).

43. Fraudulent intent may be shown by a reckless disregard for the truth. *In re Sholdra*, 249 F.3d at 383 (quoting *Economy Brick Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428 (Bankr. M.D. La. 1983). Debtors showing of reckless indifference to the truth in filling out their schedules and statements is equivalent to showing the requisite fraudulent intent to deceive sufficient to bar discharge under § 727(a)(4)(A)." *In re Guenther*, 333 B.R. 759, 767 (Bankr. N.D. Tex. 2010).

44. The Court finds that the Defendant made false oaths in this case because he did not disclose his true income on his original and amended schedules and SOFAs. The evidence showed overwhelmingly that for the year of 2017, at least, Factory Transport paid most, if not all, of the Defendant's personal expenses. Despite this, the Defendant still has on his amended schedules and SOFAs that he grossed zero income for the year 2017 and 2018 to date.

45. The Court does not accept as credible the Defendant's explanation that he relied on counsel to put the number zero down as a placeholder for his gross income or that he was relying on his CPA to ultimately sort out the numbers.

46.     Exhibit 19, page 8, was somewhat significant to the Court in reaching this ruling. The exhibit is a credit application to Ford Motor Company. It was signed by the Defendant on July 18th, 2017, when he purchased an $88,000.00 Ford F-350 approximately six months before he and Factory Transport filed for bankruptcy. On the credit application, the Defendant listed his gross monthly income at $24,000.00 per month for working as COO of Factory Transport. The Defendant knew how to estimate his income when he applied for credit just six months before filing for bankruptcy. This was stark evidence to the Court that the Defendant did in fact have the ability to estimate something more realistic than $0.00 for his 2017 income.

47.     The Defendant testified he knew he had income, he just did not know what the number was. He also testified that he had to file bankruptcy because Factory Transport closed, and, quote, "left me with no income." The Court finds this all to be incredulous and a reckless disregard for the truth, especially when Factory Transport was selling trailers for six-figure prices and even one for over $1,000,000.00.

48.     Furthermore, Exhibit 43, Factory Transport's tax return for 2016, showed Factory Transport grossed $1,068,197.00, while Defendant's amendment to his SOFA showed he had mere $15,000.00 of gross income in 2016. The Defendant's assertion on his SOFA of $15,000.00 in gross income for 2016 does not pass the smell test when Factory Transport grossed over $1 million dollars and was reimbursing his every life expense in the same year. Taken together these facts demonstrate a reckless disregard for the truth and constitute grounds to deny the Defendant's discharge under § 727(a)(4).

## Conclusion

49.     The United States Trustee has met his burden of proof with respect to the elements of 11 U.S.C. §727.  Accordingly, judgment on the Complaint is granted, and the Defendants' Discharges shall be denied.

#END OF ORDER#

*Order prepared by:*
Stephen P. McKitt
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-1073